UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| STEPHEN BUSHANSKY, | |
| Plaintiff, | Case No. _____ |
| v. | **COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| VINE ENERGY INC., ERIC D. MARSH, ANGELO ACCONCIA, H. PAULETT EBERHART, DAVID FOLEY, JOHN H. LEE, and CHARLES M. SLEDGE, | JURY TRIAL DEMANDED |
| Defendants. | |

Plaintiff Stephen Bushansky ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE AND SUMMARY OF THE ACTION

1. This action is brought by Plaintiff against Vine Energy Inc. ("Vine" or the "Company") and the members of Vine's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which Vine will be acquired by Chesapeake Energy Corporation ("Chesapeake") through Chesapeake's subsidiaries Hannibal Merger Sub, Inc. ("Merger Sub Inc.") and Hannibal Merger Sub, LLC ("Merger Sub LLC") (the "Proposed Transaction").

2. On August 11, 2021, Vine and Chesapeake issued a joint press release announcing that they had entered into an Agreement and Plan of Merger dated August 10, 2021, to sell Vine to Chesapeake (the "Merger Agreement"). Under the terms of the Merger Agreement, Vine shareholders will receive: (i) 0.2486 shares of Chesapeake common stock; and (ii) $1.20 in cash for each share of Vine common stock they own (the "Merger Consideration"). Following completion of the merger, it is anticipated that existing shareholders of Chesapeake and former stockholders of Vine immediately prior to the merger, will own approximately 84% and 16%, respectively, of the combined company following the merger. The Proposed Transaction is valued at approximately $2.2 billion.

3. On October 1, 2021, Vine filed a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC. The Proxy Statement, which recommends that Vine stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) Vine's and Chesapeake's financial projections and the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Houlihan Lokey Capital, Inc. ("Houlihan"); and (iii) Houlihan's and Company insiders' potential conflicts of interest. The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as Vine stockholders need such information in order to make a fully informed decision whether to vote in favor of the Proposed Transaction or seek appraisal.

4. In short, unless remedied, Vine's public stockholders will be forced to make a voting or appraisal decision on the Proposed Transaction without full disclosure of all material information concerning the Proposed Transaction being provided to them. Plaintiff seeks to

enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6. This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District. Moreover, Vine's common stock trades on the New York Stock Exchange, which is headquartered in this District, rendering venue in this District appropriate.

## THE PARTIES

8. Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Vine.

9. Defendant Vine is a Delaware corporation, with its principal executive offices located at 5800 Granite Parkway, Suite 550, Plano, Texas, 75024. Vine is an energy company focused on the development of natural gas properties in the stacked Haynesville and Mid-Bossier shale plays in the Haynesville Basin of Northwest Louisiana. Vine's shares trade on the New York Stock Exchange under the ticker symbol "VEI."

10. Defendant Eric D. Marsh ("Marsh") is Chairman of the Board, has been President and Chief Executive Officer ("CEO") of the Company since May 2014, and has been a director at all relevant times.

11. Defendant Angelo Acconcia ("Acconcia") has been a director of the Company since May 2014.

12. Defendant H. Paulett Eberhart ("Eberhart") has been a director of the Company at all relevant times.

13. Defendant David Foley ("Foley") has been a director of the Company at all relevant times.

14. Defendant John H. Lee ("Lee") has been a director of the Company at all relevant times.

15. Defendant Charles M. Sledge ("Sledge") has been a director of the Company since July 2017.

16. Defendants identified in paragraphs 10-15 are referred to herein as the "Board" or the "Individual Defendants."

**OTHER RELEVANT ENTITIES**

17. Chesapeake is an independent exploration and production company engaged in the acquisition, exploration and development of properties to produce oil, natural gas and natural gas liquids ("NGLs") from underground reservoirs. Chesapeake owns a large and geographically diverse portfolio of onshore U.S. unconventional natural gas and liquids assets, including interests in approximately 7,500 oil and natural gas wells. Chesapeake's natural gas resource plays are the Marcellus Shale in the northern Appalachian Basin in Pennsylvania and the Haynesville/Bossier Shales in northwestern Louisiana. Chesapeake's liquids-rich resource plays are the Eagle Ford

Shale in South Texas and the Brazos Valley and the stacked play in the Powder River Basin in Wyoming.

18. Merger Sub Inc. is a Delaware corporation and a direct, wholly owned subsidiary of Chesapeake.

19. Merger Sub LLC is a Delaware limited liability company and a direct, wholly owned subsidiary of Chesapeake.

**SUBSTANTIVE ALLEGATIONS**

**Background of the Company**

20. Vine was established in 2021 following the combination of privately held predecessor companies Vine Oil & Gas, Brix Oil & Gas Holdings and Harvest Royalties, creating the leading, pure-play Haynesville natural gas company.  The Company is an ESG leader which produces 100% natural gas.  Vine holds an average operated working interest of 83% in 227,000 net effective acres in the core of the Haynesville Basin and produce approximately 1 Bcf per day mainly across Sabine, DeSoto and Red River parishes in North Louisiana.  Approximately 84% of Vine's surface acreage is prospective for dual zone development from the Haynesville and Mid-Bossier shales, two of the most prolific natural gas resources plays in North America, and these overpressured reservoirs deliver industry leading margins and unparalleled, exceptional productivity.

21. On May 17, 2021, the Company announced its first quarter 2021 financial results and business developments.  Production increased 86 MMcfd compared to the prior year quarter due to new wells brought online, improved operational efficiencies and exceptional proved developed producing performance.  Adjusted EBITDAX was $145 million during the quarter, up from $136 million in the year ago quarter.  Adjusted Free Cash Flow increased to $20 million from

$12 million in the corresponding quarter of 2020. Reflecting on the results and looking to the future, defendant Marsh stated:

> Our initial public offering begins a sequel in Vine's short but exciting history, and it was undoubtedly the most transformational quarter since 2014 when the company was created by the acquisition of our Haynesville asset. Following the combination of three successful companies, Vine today holds a strategic position in the Haynesville Basin and we have the size, scale and balance sheet to generate significant levered free cash flow and return capital to our shareholders, while concurrently upholding our longstanding commitment to safety and environmental stewardship.
>
> Though there are many new things about us, our core identity hasn't changed. Most notably, we have about 25 years of high-quality inventory that supports our ability to create free cash flow longevity, and our operating team is one of the most highly skilled, technical collection of professionals in the industry. We harbor the institutional knowledge and technology which allows us to drill some of the most economic natural gas wells in North America. We believe we can eclipse past milestones as we reach new drilling and completion efficiencies, drive down capital intensity and operating expenses, and deliver on our expectations. Along the way, I believe improving natural gas fundamentals will hasten our bid to substantially increase the value of the company while holding production steady.

**The Proposed Transaction**

22.     On August 11, 2021, Vine and Chesapeake issued a joint press release announcing the Proposed Transaction, which states, in relevant part:

> OKLAHOMA CITY, August 11, 2021 – Chesapeake Energy Corporation (NASDAQ:CHK) ("Chesapeake") and Vine Energy Inc. (NYSE:VEI) ("Vine") today announced that they have entered into a definitive agreement pursuant to which Chesapeake will acquire Vine, an energy company focused on the development of natural gas properties in the over-pressured stacked Haynesville and Mid-Bossier shale plays in Northwest Louisiana. The acquisition is a zero premium transaction valued at approximately $2.2 billion, based on a 30-day average exchange ratio as of Tuesday's close, equating to $15.00 per share.
>
> **Transaction highlights include:**
>
> - ***Vine shareholders will receive fixed consideration of 0.2486 shares of Chesapeake common stock plus $1.20 cash per share of Vine common stock, for total consideration of $15.00 per share, comprising of 92% stock and 8% cash***

- *Increases Chesapeake's cumulative five-year free cash flow(1) outlook by approximately $1.5 billion, or 68% of the transaction value, to approximately $6.0 billion, or 66% of pro forma enterprise value*
- *Immediately accretive to operating cash flow per share, free cash flow(1) per share, free cash flow yield(1), and GHG emissions profile*
- *2022 pro forma net debt-to-EBITDAX(1) ratio of 0.6x, preserves Chesapeake's balance sheet strength*
- *Approximately $50 million in average annual savings expected from operating and capital synergies*
- *Expected to increase base dividend by 27% to $1.75 per share post close reflecting cash flow accretion of transaction, subject to Board approval*
- *Vine position consolidates Haynesville/Bossier adding approximately 370 premium 50% rate of return drilling locations at $2.50 NYMEX gas price*
- *Lowers Chesapeake's pro forma total gathering, processing and transportation (GP&T) expense by approximately 15% and diversifies the company's midstream partnerships*

(1) Non-GAAP financial measures defined below.

Mike Wichterich, Chesapeake's Board Chairman and Interim Chief Executive Officer, commented, "This transaction strengthens Chesapeake's competitive position, meaningfully increasing our free cash flow outlook and deepening our inventory of premium gas locations, while preserving the strength of our balance sheet. By consolidating the Haynesville, Chesapeake has the scale and operating expertise to quickly become the dominant supplier of responsibly sourced gas to premium markets in the Gulf Coast and abroad."

Eric Marsh, Vine's Chairman, President, and Chief Executive Officer said, "We firmly believe that the quality of our assets, combined with the scale, depth and diversity of Chesapeake's portfolio, and our shared unwavering commitment to ESG excellence, provides significant opportunity to accelerate the return of capital to our combined shareholders."

David Foley, Global Head of Blackstone Energy Partners added, "We believe in the benefits of consolidation. Blackstone looks forward to being a Chesapeake shareholder and participating fully in the significant value creation potential that will be unlocked by the combined company."

**Transaction Details**

Under the terms of the merger agreement, which was unanimously approved by the Board of Directors of each company, Vine shareholders will receive a fixed exchange ratio of 0.2486 Chesapeake shares of common stock and $1.20 of cash for each share of Vine common stock owned. Upon closing, Chesapeake shareholders will own approximately 86% and Vine shareholders will own approximately 14% of the fully diluted shares of the combined company.

The transaction, which is subject to customary closing conditions, including certain regulatory approvals, and the approval of Vine shareholders, is expected to close in the fourth quarter of 2021. Funds managed by The Blackstone Group Inc. own approximately 70% of outstanding shares of Vine common stock and have entered into a support agreement to vote in favor of the transaction.

**Preliminary 2022 Pro Forma Outlook**

Pending the successful closing of the transaction in the fourth quarter of 2021, Chesapeake's preliminary plan is to operate 10 to 12 rigs in 2022, with 8 to 9 rigs focused on its gas portfolio and 2 to 3 rigs concentrating on its oil assets. The company will maintain its commitment to a disciplined capital reinvestment strategy, anticipating a 2022 reinvestment rate of 50 – 60%. At NYMEX strip pricing as of July 30, 2021, this preliminary capital program is anticipated to generate between $2.55 billion to $2.75 billion in total adjusted EBITDAX. Chesapeake also anticipates this preliminary capital program will result in its average annual 2022 oil production remaining flat from 2021 fourth quarter average levels.

Updated 2021E – Preliminary 2022E Outlook [2]

| | 2021E CHK Previous | 2021E CHK 8/10/21 | 2022E CHK | 2022E CHK Pro Forma |
|---|---|---|---|---|
| Oil Production (mmbbl) | 23.0 – 25.0 | 23.5 – 25.5 | 20 – 22 | 20 – 22 |
| Gas Production (bcf) | 715 – 735 | 725 – 745 | 750 – 775 | 1,095 – 1,125 |
| Total Production (mboe/d) | 410 – 420 | 415 – 435 | 415 – 435 | 575 – 595 |
| LOE per boe | $1.85 – $2.15 | $1.85 – $2.15 | $1.85 – $2.15 | $1.65 – $1.95 |
| GP&T per boe | $4.90 – $5.40 | $4.90 – $5.40 | $4.70 – $5.20 | $3.90 – $4.40 |
| G&A per boe | $0.85 – $1.15 | $0.75 – $0.95 | $0.75 – $0.95 | $0.55 – $0.75 |
| Adjusted EBITDAX[3] ($B) | $1.55 – $1.65 | $1.8 – $1.9 | $1.85 – $2.05 | $2.55 – $2.75 |
| Total Capex ($mm) | $670 – $740 | $670 – $740 | $900 – $1,200 | $1,300 – $1,600 |
| Reinvestment Rate | ~44% | ~38% | ~54% | ~55% |
| Enterprise Value ($B) | | | $7.0 | $9.1 |
| Net Debt[3] ($B) (6/30/21) | | | $0.6 | $1.7 |
| Fully Diluted Shares (mm) | | | 116 | 135 |

|  | 2022E CHK | 2022E CHK Pro Forma |
|---|---|---|
| Operating Cash Flow per Share | ~$16.10 | ~$18.50 |
| FCF(3) / Fully Diluted Share | ~$7.10 | ~$7.80 |
| FCF Yield(3) | 13% | 14% |
| Net Debt / EBITDAX(3) | 0.3x | 0.6x |

2022 Projected Multiples (2)

(2) Based on 7/30/21 strip prices and 8/06/21 CHK stock price.
(3) Non-GAAP financial measures defined below.

**Increasing Base Dividend and Establishing Variable Return Program**

Following completion of the transaction, Chesapeake expects to raise its base dividend by 27% to $1.75 per share as a result of the significant increase in free cash flow which reaches approximately $6 billion over the next five years. Additionally, Chesapeake announced the establishment of a variable return program to deliver 50% of the previous quarter's free cash flow to investors in cash, payable the following quarter, and beginning with results from the 2021 fourth quarter.

**Insiders' Interests in the Proposed Transaction**

23. Vine insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Vine.

24. Notably, Company insiders stand to reap substantial financial benefits for securing the deal with Chesapeake. Under the terms of the Merger Agreement, irrespective of a qualifying termination, certain Company restricted stock units ("RSUs") will vest and convert into the right to receive the Merger Consideration, as set forth in the following table:

| Name | Unvested RSUs (#) | Estimated Value(1) ($) |
|---|---|---|
| Charles M. Sledge | 28,571 | 419,994 |
| H. Paulett Eberhart | 10,714 | 157,496 |

25. Moreover, if they are terminated in connection with the Proposed Transaction, Vine insiders stand to receive substantial cash severance payments in the form of golden parachute compensation, as set forth in the following table:

| Name | Cash[1] ($) | Equity[2] ($) | Perquisites/Benefits[3] ($) | Total ($) |
|---|---|---|---|---|
| Eric D. Marsh | 8,316,508 | 7,454,987 | 1,732 | 15,773,228 |
| David M. Elkin | 1,581,855 | 3,989,992 | 29,014 | 5,600,860 |
| Wayne B. Stoltenberg | 1,842,286 | 3,464,996 | 28,016 | 5,335,298 |
| Jonathan C. Curth | 1,346,712 | 997,513 | 29,014 | 2,373,239 |

**The Proxy Statement Contains Material Misstatements and Omissions**

26. The defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to Vine's stockholders. The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote their shares in favor of the Proposed Transaction or seek appraisal.

27. Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) Vine's and Chesapeake's financial projections and the data and inputs underlying the financial valuation analyses performed by the Company's financial advisor Houlihan; and (ii) Houlihan's and Company insiders' potential conflicts of interest. Accordingly, Vine stockholders are being asked to vote in favor of the Proposed Transaction or seek appraisal without all material information at their disposal.

*Material Omissions Concerning Vine's and Chesapeake's Financial Projections and Houlihan's Financial Analyses*

28. The Proxy Statement fails to disclose material information concerning Vine's and Chesapeake's financial projections.

29. For example, for each of Vine's and Chesapeake's projections, the Proxy Statement fails to disclose the line items underlying (i) Adjusted EBITDA, (ii) Operating Cash Flow, and (iii) Adjusted Free Cash Flow.

30. The Proxy Statement also describes Houlihan's fairness opinion and the various valuation analyses performed in support of its opinion. However, the description of Houlihan's fairness opinion and analysis fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, Vine's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Houlihan's fairness opinion in determining whether to vote in favor of the Proposed Transaction or seek appraisal. This omitted information, if disclosed, would significantly alter the total mix of information available to Vine's stockholders.

31. With respect to Houlihan's *Vine Selected Companies Analysis* and *Chesapeake Selected Companies Analysis*, the Proxy Statement fails to disclose the individual multiples and financial metrics for each of the companies observed in the analyses.

32. With respect to Houlihan's *Vine Selected Transactions Analysis* and *Chesapeake Selected Transactions Analysis*, the Proxy Statement fails to disclose the individual multiples and financial metrics for each of the transactions observed in the analyses.

33. With respect to Houlihan's *Corporate Discounted Cash Flow Analysis* for Vine, the Proxy Statement fails to disclose: (i) quantification of the estimated net present value of the projected unlevered, after-tax free cash flows of Vine; (ii) quantification of Vine's EBITDAX for fiscal year 2025; and (iii) quantification of the inputs and assumptions underlying the discount rates ranging from 7.0% to 8.0%.

34. With respect to Houlihan's *Net Asset Value Discounted Cash Flow Analysis* for Vine, the Proxy Statement fails to disclose: (i) quantification of the estimated net present value of its estimated gas reserves in each of the 1P Reserves and 3P Reserves categories for Vine; and (ii) quantification of the inputs and assumptions underlying the WACC discount rates ranging from 7.0% to 8.0%.

35. With respect to Houlihan's *Corporate Discounted Cash Flow Analysis* for Chesapeake, the Proxy Statement fails to disclose: (i) quantification of the estimated net present value of the projected unlevered, after-tax free cash flows of Chesapeake; (ii) quantification of Chesapeake's EBITDAX for fiscal year 2025; and (iii) quantification of the inputs and assumptions underlying the discount rates ranging from 7.5% to 8.5%.

36. With respect to Houlihan's *Net Asset Value Discounted Cash Flow Analysis* for Chesapeake, the Proxy Statement fails to disclose: (i) quantification of the estimated net present value of its estimated gas reserves in each of the 1P Reserves and 3P Reserves categories for Chesapeake; and (ii) quantification of the inputs and assumptions underlying the WACC discount rates ranging from 7.5% to 8.5%.

37. The omission of this information renders the statements in the "Certain Vine Unaudited Forecasted Financial Information" and "Opinion of Vine's Financial Advisor" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Houlihan's and Company Insiders' Potential Conflicts of Interest***

38. The Proxy Statement fails to disclose material information concerning potential conflicts of interest faced by Houlihan.

39. The Proxy Statement sets forth:

> Houlihan Lokey has in the past provided financial advisory services to certain lenders of Chesapeake in connection with Chesapeake's chapter 11 restructuring, which was completed in February 2021, and Houlihan Lokey and/or certain of its affiliates have in the past provided and are currently providing investment banking, financial advisory and/or other financial or consulting services to Blackstone, or one or more security holders or affiliates of, and/or portfolio companies of investment funds affiliated or associated with, Blackstone (collectively, with Blackstone, the "Blackstone Group"), for which Houlihan Lokey and its affiliates have received, and may receive, compensation, including, among other things, (i) having acted as financial advisor to an affiliate of Blackstone as a lender to One Call Corp. in connection with a recapitalization transaction, which was completed in October 2019, and (ii) having acted as financial advisor to Stearns Holdings, LLC, then a member of the Blackstone Group, in connection with its sale transaction, which closed in March 2021. Houlihan Lokey and certain of its affiliates may provide investment banking, financial advisory and/or other financial or consulting services to Vine, Chesapeake, members of the Blackstone Group, other participants in the merger or certain of their respective affiliates or security holders in the future, for which Houlihan Lokey and its affiliates may receive compensation. In addition, Houlihan Lokey and certain of its affiliates and certain of its and their respective employees may have committed to invest in private equity or other investment funds managed or advised by Blackstone, other participants in the merger or certain of their respective affiliates or security holders, and in portfolio companies of such funds, and may have co-invested with members of the Blackstone Group, other participants in the merger or certain of their respective affiliates or security holders, and may do so in the future. Furthermore, in connection with bankruptcies, restructurings, distressed situations and similar matters, Houlihan Lokey and certain of its affiliates may have in the past acted, may currently be acting and may in the future act as financial advisor to debtors, creditors, equity holders, trustees, agents and other interested parties (including, without limitation, formal and informal committees or groups of creditors) that may have included or represented and may include or represent, directly or indirectly, or may be or have been adverse to, Vine, Chesapeake, members of the Blackstone Group, other participants in the merger or certain of their respective affiliates or security holders, for which advice and services Houlihan Lokey and its affiliates have received and may receive compensation.

Proxy Statement at 70. The Proxy Statement fails to disclose the fees received by Houlihan for the services it has provided to the parties to the Merger Agreement and their affiliates.

40.     Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

41. The omission of this information renders the statements in the "Opinion of Vine's Financial Advisor" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

42. Further, the Proxy Statement fails to disclose material information concerning the potential conflicts of interest faced by Vine insiders.

43. The Proxy Statement fails to disclose whether any of Vine's executive officers or directors is continuing their employment following consummation of the Proposed Transaction, as well as the details of all employment and retention-related discussions and negotiations that occurred between Chesapeake and Vine's executive officers, including who participated in all such communications, when they occurred and their content. The Proxy Statement further fails to disclose whether any of Chesapeake's proposals or indications of interest mentioned management retention in the combined company following the Proposed Transaction or the purchase of or participation in the equity of the surviving corporation.

44. Communications regarding post-transaction employment and merger-related benefits during the negotiation of the underlying transaction must be disclosed to shareholders. This information is necessary for shareholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

45. The omission of this information renders the statements in the "Opinion of Vine's Financial Advisor," "Background of the Merger" and "Interests of Vine's Directors and Executive Officers in the Merger" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

46.     The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement.  Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other stockholders of Vine will be unable to make a sufficiently informed voting or appraisal decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**Claims Against All Defendants for Violations of Section 14(a) of the
Exchange Act and Rule 14a-9 Promulgated Thereunder**

47.     Plaintiff repeats all previous allegations as if set forth in full.

48.     During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

49.     By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement.  The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants.  It misrepresented and/or omitted material facts, including material information about Vine's and Chesapeake's financial projections, the inputs and assumptions underlying Houlihan's financial analyses, and Houlihan's and Company insiders' potential conflicts of interest.  The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

50.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

51.     By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

52.     Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate.  Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Claims Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

53.     Plaintiff repeats all previous allegations as if set forth in full.

54.     The Individual Defendants acted as controlling persons of Vine within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Vine, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

55.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

56. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Proxy Statement.

57. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

58. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

59. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Vine stockholders will be irreparably harmed.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Vine, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and


any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Vine stockholders;

  B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

  C. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

  D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

  E. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated:  October 11, 2021        **WEISSLAW LLP**

                By _____
                Richard A. Acocelli
                305 Broadway, 7h Floor
                New York, New York 10007
                Tel: (212) 682-3025
                Fax: (212) 682-3010
                Email: racocelli@weisslawllp.com

                *Attorneys for Plaintiff*